UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PATRICK J. CONNORS,

                Plaintiff,

    v.

IQUIQUE U.S.L.L.C., et al.,

                Defendants.

CASE NO. C05-334JLR

ORDER

## I.  INTRODUCTION

This matter comes before the court on five motions for summary judgment and several non-dispositive requests for relief.  Plaintiff Patrick Connors has filed three dispositive motions (Dkt. ## 171-173), as well as a procedural motion to excuse a late-filed declaration (Dkt. # 194) and an uncalendared request for an order compelling a second deposition of Dr. Lawrence Haft.  Defendants have filed two dispositive motions (Dkt. ## 146, 148).  Although Plaintiff has requested oral argument, the court finds these motions suitable for disposition based on the parties' briefing and supporting evidence.  The court GRANTS and DENIES the motions as stated below.

## II.  BACKGROUND

Plaintiff Patrick Connors served as the chief engineer aboard the F/V UNIMAK ("UNIMAK"), a ship that Defendants own, beginning in late May or early June 2004.  On

ORDER – 1

June 15, 2004, Plaintiff experienced chest pain while lifting a pump onboard the ship during a drill that the United States Coast Guard mandated. He returned to shore and went to a hospital on June 17, 2004. Since then, he has undergone a variety of cardiac treatments for complications from coronary artery disease. His cardiologist, Dr. Lawrence Haft, has determined that Plaintiff suffered a heart attack onboard the UNIMAK on June 15, 2005. As a result of that heart attack and complications stemming from Plaintiff's pre-existing coronary artery disease, Dr. Haft does not believe that Plaintiff will ever be able to return to work.

On April 12, 2006, the court vacated all remaining pretrial deadlines as well as the trial date, pending its resolution of dispositive motions.

## III. ANALYSIS

In reviewing the pending summary judgment motions, the court must draw all inferences from the evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the opposing party must show that there is a genuine issue of fact for trial. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). For purely legal questions, summary judgment is appropriate without deference to either party.

Ordinarily, when issuing orders resolving summary judgment motions, the court attempts to engage in a point-by-point analysis of the parties' claims and defenses. In this

ORDER – 2

case, however, although the court has considered each of the parties' arguments, the court's order will be relatively cursory.  The number of spurious, inadequately briefed, and specious issues the parties have put before the court necessitates this approach. In searching for the example that best illustrates the character of this proceeding, the court need go no further than a question Defendants' counsel asked of Plaintiff during his deposition:

*What was your problem communicating with the toilets?*

(Dkt. # 186 at 3 (emphasis added)).  Mr. Connors, the Plaintiff, is alleged to have suffered a serious and debilitating injury.  While counsel should be focused upon determining whether Defendants are liable for this injury, it appears that much of their time is devoted to collateral issues.  For example, Plaintiff's counsel blathers about double jeopardy in the trial of O.J. Simpson (Dkt. # 193 at 1-2).  The parties have stretched the court's patience to its limit.  The court hereby places all counsel on notice that it will use its power under 28 U.S.C. § 1927 to impose penalties for any further "unreasonabl[e] and vexatious[]" multiplication of the proceedings in this matter.  In this order, the court will delimit the scope of this action and set a schedule for trial.  Counsel shall confine their efforts to addressing issues within the scope of this action.  The court expects no further toilet talk.

**A.   Defendants' Motions Concerning the Causes of Plaintiff's Injuries**

     **1.   Causes of Plaintiff's Injuries Other than Lifting the Pump**

In motions concerning Plaintiff's entitlement to maintenance and cure, the parties and the court have focused on the claim that the exertion of lifting the pump on June 15, 2004 caused Plaintiff's cardiac trauma.  Defendants now seek to eliminate several other conditions aboard the UNIMAK as potential causes of Plaintiff's injuries.  According to Plaintiff, the UNIMAK had a number of problems that occupied his attention as chief

ORDER – 3

engineer.  For example, the UNIMAK's hull had a crack, the vessel had a broken auxiliary engine, the engine leaked exhaust into the engine room where Plaintiff worked, other below-deck spaces had inadequate ventilation, the vessel's chlorinators did not work properly, and the oil separator for bilge water did not work.  Plaintiff claims that these conditions kept him working long hours, and left him with little time to sleep.  In addition to his work responsibilities, Plaintiff claims that many members of the crew were unable to speak English, which caused him additional stress.

Plaintiff's assertions about the conditions aboard the UNIMAK devolve into two theories of liability.  The first theory is that one or more of the conditions contributed to causing Plaintiff's heart attack.  The second theory is that Plaintiff can recover separately for any emotional distress he suffered as a result of these conditions.

The first theory fails as a matter of law because Plaintiff has no evidence from which a rational trier of fact could conclude that any shipboard condition (except lifting the pump) caused Plaintiff's heart attack.  Plaintiff asserts that Dr. Henry DeMots, his expert medical witness, provides the necessary evidence.  But while Plaintiff's counsel feels the need to expound on the merits of ten-year-old verdicts in criminal trials of retired football players in California, he fails to identify any evidence from Dr. DeMots to support his claim in this case.  Indeed, Plaintiff has not pointed to any evidence from Dr. DeMots, much less any evidence that would allow a fact finder to conclude that shipboard conditions caused his heart attack.  Defendants have provided Dr. DeMots' "expert report" for the court's consideration.  In the only two relevant paragraphs, Dr. DeMots asserts that:

> I have been asked whether stress and fatigue (both from excess work and lack of sleep) which Mr. Connors said he experienced on the vessel leading up to 6/15/04 contributed to or made him more susceptible to the plaque rupture and subsequent heart attack.  The data supports both of these as factors increasing the likelihood of heart attack.

ORDER – 4

> I have been asked whether breathing bad air in the engine room during the period leading up to 6/15/04 contributed to or made Mr. Connors more susceptible to the plaque rupture and subsequent heart attack.  If carbon monoxide was present this would have been a risk increasing factor. . . . If you are having a heart attack, that's going to aggravate things.  It may also incrementally increase risk of plaque rupture by making plaque deposits more inflamed and more likely to rupture.

Spivak Decl. Ex. E at 4.  There is no other evidence from Dr. DeMots in the record.

Dr. DeMots' expert report is insufficient as a matter of law to establish that either stress, fatigue, or "bad air" was a cause of Plaintiff's heart attack.  As to stress and fatigue, Dr. DeMots merely states that unspecified "data" supports the assertion that stress and fatigue are "risk factors increasing the likelihood of heart attack."  This is woefully inadequate.  Plaintiff must produce evidence that would allow the jury to conclude that the stress that *Plaintiff* suffered contributed to *Plaintiff's* heart attack.  Instead, Dr. DeMots states that in general, stress and fatigue are "risk factors" for heart attack, without ever addressing the role of the stress and fatigue that Plaintiff suffered on the UNIMAK in causing his cardiac trauma.  On this basis, no rational trier of fact could conclude that stress and fatigue were a cause of his heart attack.[1]  As to "bad air," Dr. DeMots' report suffers from the same shortcomings.  Although he concludes that inhaled carbon monoxide can aggravate a heart attack or contribute to causing one, he provides no evidence specific to Plaintiff that would permit a jury to conclude that breathing poorly ventilated air was a cause of Plaintiff's heart attack.

---

[1]Plaintiff repeatedly cites the "featherweight" causation standard applicable to Jones Act claims, but this does not relieve him of the burden to provide admissible evidence of causation.  Dr. Demots' expert report falls short.  See Claar v. Burlington N. R.R., 29 F.3d 499, 503 (9th Cir. 1994 (noting that a relaxed causation standard does not relax the standard for admissibility of expert testimony).

ORDER – 5

Plaintiff's second theory, that he can recover for negligent infliction of emotional distress due to shipboard conditions, fails for a different reason. A plaintiff can recover for negligent infliction of emotional distress only when he suffers physical or emotional injuries "caused by the negligent conduct of [his] employer[] that threatens [him] imminently with physical impact." Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 556 (1994) (stating "zone of danger" standard for emotional distress claims under the Federal Employers' Liability Act). The Ninth Circuit applies the Gottshall zone of danger test to emotional distress claims under maritime law. Chan v. Society Expeditions, 39 F.3d 1398, 1408-09 (9th Cir. 1994).

Plaintiff argues that shipboard conditions on the UNIMAK threatened him with imminent physical impact in two ways. First, he claims several of the conditions created the risk that the UNIMAK would sink or lose propulsion. Second, he claims that the cracked hull and malfunctioning machinery of the UNIMAK violated federal statutes, and that Plaintiff feared that he would be imprisoned as a result of these violations. As Plaintiff's counsel expresses it: "Forcible imprisonment prison [sic] with criminal degenerates is a tortious interference with the person and a physical injury."

The court rejects Plaintiff's arguments and finds that none of the shipboard conditions threatened Plaintiff "imminently with physical impact" as the law requires. There is no evidence that Plaintiff believed the UNIMAK would sink, much less that it would sink "imminently." Even accepting the sincerity of Plaintiff's belief that he would be imprisoned for the malfunctioning equipment aboard the UNIMAK, the court finds that Plaintiff's speculative fear of imprisonment is not fear of "imminent" harm.

**2.      Lifting the Pump as a Cause of Plaintiff's Injuries**

By contrast, Plaintiff's claim that lifting the pump during Coast Guard drills caused his heart attack may proceed to trial. As the court detailed in a prior order (Dkt.

ORDER – 6

# 121), the testimony of Dr. Haft provides evidence from which a jury could conclude that the stress of lifting the pump caused the heart attack that disabled Plaintiff. Defendants do not dispute this evidence, but argue instead that Plaintiff voluntarily chose to lift the pump, and that they were not at fault for his decision.

Viewing the evidence in the light most favorable to Plaintiff, a trier of fact could conclude that either an unseaworthy condition aboard the UNIMAK or negligence on behalf of Defendants caused him to lift the pump. A trier of fact could conclude that Defendants' failure to train the UNIMAK's crew contributed to generally chaotic conditions during the Coast Guard drill. A trier of fact could find that, under the circumstances, Plaintiff justifiably chose to lift the pump himself rather than wait for assistance from the untrained crew. Plaintiff has no viable claim that the pump itself was unseaworthy.[2] Instead, his claim is that Defendants' failure to train its crew to respond properly during the Coast Guard drill created a foreseeable risk that crew members like Plaintiff would be forced to exert themselves in unanticipated ways.[3] Ultimately, a jury must decide how to apportion fault between Plaintiff and Defendants for Plaintiff's decision to lift the pump.

### 3. Reversing the Burden of Proof

Plaintiff urges the court to find that Defendants violated various safety statutes and regulations, and to find that the "Pennsylvania Rule" shifts to Defendants the burden proving that those violations *did not* cause Plaintiff's injuries. The court has reviewed the

---

[2]If Plaintiff were making such a claim, it would fail, because he has offered no evidence that Defendants were on notice of the risk that a single person would attempt to carry the pump under ordinary conditions.

[3]The parties devote much discussion to the "primary duty doctrine" as a defense to liability. The doctrine has no applicability here, however, because Plaintiff unquestionably was not responsible for training the UNIMAK's crew to respond to Coast Guard drills.

ORDER – 7

handful of decisions in which courts have applied the Pennsylvania Rule, including the Honorable Thomas S. Zilly's decision in Elms v. Crowley Marine Serv., Inc., 1997 AMC 835 (W.D. Wash. 1996).  Where courts have applied the Pennsylvania Rule, they have looked first for a nexus between the safety regulation and the plaintiff's injuries.  In Elms, for example, the court noted that the plaintiff had proven "by a preponderance of the evidence" that defendants' decision to require "plaintiff to work in excess of 12 hours in a consecutive 24-hour period [in violation of a safety regulation], during the time immediately preceding [plaintiff's] injury, played a substantial part in producing his injury."  Elms, 1997 AMC at 842.  The court finds that, with the exception of regulations pertaining to training for Coast Guard drills, Plaintiff has provided no evidence that Defendants' alleged statutory or regulatory violations were a potential cause of his injuries.  As to the training regulations, the court need not decide at this time whether the Pennsylvania Rule applies.  The parties may address the issue again in preparing their jury instructions.

**B.     Intentional Concealment**

       On November 9, 2005, the court denied Defendants' motion for summary judgment on its defense that Plaintiff intentionally concealed his poor cardiac health from them in an employment questionnaire.  In reviewing the numerous disputed issues of fact surrounding this defense, the court held that "[a] jury must decide the intentional concealment question."  (Dkt. # 121 at 5).  Plaintiff's motion for summary judgment provides no evidence that would lead to a different outcome here.  The intentional concealment defense in this action is fraught with disputes of material fact, and is not amenable to resolution on summary judgment.

ORDER – 8

**C.     Defendants' Compliance with 46 U.S.C. § 8103**

Plaintiff contends that many crew members aboard the UNIMAK were unable to speak English, and that this contributed both to his general level of stress and to the inability of the crew to properly man the UNIMAK during the Coast Guard drill.  In an effort to bolster this contention, Plaintiff asks for summary judgment that Defendants violated 46 U.S.C. § 8103, which sets forth citizenship requirements for crew members of certain vessels, and establishes that no more than 25% of the crew members may be aliens admitted to the United States for permanent residence.

Plaintiff's argument is as follows:  (1) he requested documentation regarding the citizenship of the UNIMAK's crew; (2) Defendants did not provide any; (3) the court should therefore assume that Defendants violated 46 U.S.C. § 8103; (4) the court should therefore assume that many of the crew members were aliens (documented or undocumented); (5) the court should therefore assume that many of the crew members were unable to speak English; and (6) the court should therefore find that Defendants were negligent per se.

The court's responses are as follows:  (1) Plaintiff never requested documentation regarding the citizenship of the UNIMAK's crew;[4] (2) Defendants were therefore under no obligation to provide citizenship records; (3) the court has no basis to find that Defendants violated 46 U.S.C. § 8103, even if such a finding were relevant; (4) the court

_____

[4]During discovery, Plaintiff requested "any record showing whether [any] crewmember speaks fluent English."  This request does not call for citizenship records.  Plaintiff's attempt to rely on a catchall request for "any documents or things not already produced which are in any way relevant" is unavailing.  If Plaintiff had moved to compel compliance with this discovery request, the court would have denied the motion, and would have ordered Plaintiff's counsel to show cause why the court should not impose sanctions for relying on such an obviously overbroad request.

ORDER – 9

declines to assume that members of the UNIMAK's crew were aliens; (5) the court finds Plaintiff's insistence that alienage is equivalent to an inability to speak English to be uninformed and offensive; and (6) Defendants' compliance with 46 U.S.C. § 8103 has no relevance in this action.

The court further holds that if Plaintiff raises the citizenship status of the UNIMAK's crew again in this action, it will impose sanctions on Plaintiff's counsel. To the extent it is relevant, Plaintiff is free to present evidence that some members of the crew were unable to speak English. Plaintiff is forbidden to suggest that any crew member's status as a documented or undocumented alien is relevant to this issue.

## IV. CONCLUSION

### A.    Summary of Disposition of Pending Motions

As stated above, trial will focus solely on Plaintiff's claim that lifting the pump on June 15, 2004 caused his injuries. Plaintiff can pursue the theory that Defendants created an unseaworthy condition or were negligent in creating or permitting the conditions that led to Plaintiff's decision to lift the pump. With this summary of the case in mind, the court provides the following dispositions of the parties' motions:

The court GRANTS Defendants' motion regarding claims of stress and fatigue (Dkt. # 146) and DENIES Defendants' motion regarding claims focused on Plaintiff lifting the pump on June 15, 2004 (Dkt. # 148).

The court DENIES Plaintiff's motion regarding the primary duty defense (Dkt. # 171), but notes that the primary duty defense does not appear to apply to the narrow claims remaining for trial. The court DENIES Plaintiff's motion regarding intentional concealment (Dkt. # 172) and his motion regarding violations of 46 U.S.C. § 8103 (Dkt. # 173). The court GRANTS Plaintiff's motion for an extension of time to provide a late-filed declaration (Dkt. # 194).

ORDER – 10

1    Finally, the court DENIES Plaintiff's uncalendared motion for leave to depose Dr.

2  Haft a second time.  The court has reviewed the record, which reveals that Plaintiff's

3  counsel acted unreasonably and without consideration for Dr. Haft.  When Defendants

4  scheduled a 2:00 p.m. deposition for Dr. Haft last November, Plaintiff's counsel made no

5  effort to request an earlier starting time to accommodate his questioning.  Rather than

6  attempt to complete his questioning at the scheduled deposition, Plaintiff's counsel

7  abandoned the deposition.  He did not discuss the possibility of a second deposition with

8  Dr. Haft.  Counsel's final words to Dr. Haft at the deposition were "That's all I have."

9  The court will hold counsel to his word, and will not permit a second deposition of Dr.

10  Haft.

11

12  **B.    Pretrial Schedule**

13    Trial in this matter will commence on August 7, 2006 at 1:30 p.m.  The court

14  orders the parties to complete a second mediation no later than June 30, 2006.  All

15  motions in limine and an agreed pretrial order in accordance with Local Rules W.D.

16  Wash. CR 16.1 are due no later than July 7, 2006, and shall be noted for consideration on

17  July 21, 2006.  The parties shall file designations of deposition testimony to be used at

18  trial in accordance with Local Rules W.D. Wash CR 32(e), jury instructions and verdict

19  forms in accordance with CR 51, proposed voir dire, and trial briefs no later than July 28,

20  2006.  The court will conduct a pretrial conference on August 1, 2006 at 2:00 p.m.

21    Dated this 24th day of May, 2006.

22

23

24

25  _____

26  JAMES L. ROBART
   United States District Judge

27

28

ORDER – 11